**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KENNETH LENTON | : | CIVIL ACTION |
| Appellant, | : | |
| | : | |
| v. | : | No. 07-178 |
| | : | |
| UNITED STATES TRUSTEE | : | |
| Appellee. | : | |
| | : | |
| In re: | : | Chapter 13 |
| | : | |
| KENNETH LENTON, | : | Bankr. No. 06-10520 |
| Debtor. | : | |
| | : | |

**<u>MEMORANDUM OPINION</u>**

**Goldberg, J.**                                                                                    **June 29, 2009**

Before the Court is Kenneth Lenton's (hereinafter, "Debtor") appeal from the December 15, 2006, Opinion and Order of the United States Bankruptcy Court, denying him Chapter 7 bankruptcy relief.  Debtor has challenged the Bankruptcy Court's ruling that a finding of abuse pursuant to 11 U.S.C. § 707(b)(3) under the totality of the circumstances may be based solely on Debtor's ability to pay.  Debtor also claims that the Bankruptcy Court erred in ruling that the Trustee had established "abuse" under that section.  Having concluded, however, that these claims are moot, we need not examine these issues, and for reasons set forth herein, dismiss Debtor's appeal.

**I**.  **<u>Procedural and Factual History</u>**

Debtor filed a Chapter 7 bankruptcy claim on February 7, 2006.  At that time, he had been employed by Sunoco, Inc. for eighteen (18) years and had voluntarily contributed to his company's

1

ERISA-qualified 401(k) plan.  While making these contributions, Debtor also accumulated a sizable amount of credit card debt and voluntarily obtained two 401(k) loans from his 401(k) plan in an aggregate amount of $42,500.00 in order to pay off a portion of this debt.[1]  In re Lenton, 358 B.R. 651, 654-55 (Bankr.E.D.Pa. 2006).

On July 12, 2006, the Trustee filed a motion to dismiss pursuant to 11 U.S.C. § 707(b), asserting that Debtor should not be permitted to deduct these loans to avoid or rebut the presumption of abuse under the means test of 11 U.S.C. § 707(b)(2)(A).  On December 15, 2006, the Bankruptcy Court granted the motion to dismiss.  In so ruling, the Bankruptcy Court held that:

- The loans taken from Debtor's 401(k) could not be deducted from income, and thus, under the "mean test" of § 707(b)(2)(A), Debtor's Chapter 7 claim was presumptively abusive;

- Debtor had adequately rebutted the presumption of abuse by proving that his obligations to repay his 401(k) loans constituted special circumstances; and

- Considering "the totality of the circumstances," pursuant to § 707(b)(3)(B), Debtor's ability to repay a significant portion of his outstanding debts was sufficient to establish a finding of abuse.

Id. at 661-62, 666.  In an accompanying order, the Bankruptcy Court ruled that the case "shall be dismissed within ten (10) days following entry of this order unless Debtor converts this case to one under Chapter 13."  Id. at 666.

On December 20, 2006, Debtor filed a praecipe and plan to convert his case from Chapter 7 to Chapter 13.  An Order converting the case to Chapter 13 was subsequently entered on December 21, 2006.  (Bankr. Docket No. 06-10520).

---

[1]  Debtor obtained the first 401(k) loan "on October 5, 2002 in the amount of $24,000 and the second on November 20, 2004 in the amount of $18,500.00."  According to the Bankruptcy Court, "at the current repayment rate, the First Loan will be paid in full on or about July 30, 2007 and the Second Loan will be paid in full on August 24, 2009."  Lenton, 358 B.R. at 654 (internal referencing terms omitted).

On December 22, 2006, Debtor filed a notice of appeal from the Bankruptcy Court's Opinion and Order, but did not petition for a stay of that ruling.  At oral argument before this Court, when Debtor's counsel was asked why a stay was not sought, he explained that Debtor preferred to make payments under the five (5) year Chapter 13 plan rather than wait for the conclusion of his appeal. (N.T. 3/27/09, pp. 9-10, 33-34).

On April 9, 2007, Debtor filed an amended Chapter 13 plan, which was confirmed on May 24, 2007, and accepted by the Trustee the next day.  Finally, on May 27, 2007, an Order was issued confirming that the Chapter 13 plan was entered and notices were mailed to interested parties. Debtor has since been complying with the Chapter 13 plan.  (Bankr. Docket No. 06-10520)**.**

Debtor's present appeal seeks to vacate the Chapter 13 plan consummated almost two (2) years ago, and requests an order remanding the case to the Bankruptcy Court to enter judgment granting Chapter 7 relief.  (Bankr. Docket No. 06-10520).

Although the Bankruptcy Court Opinion addressed numerous issues, Debtor has only raised two claims of error as follows:

1)      "Whether the bankruptcy court erred in holding that a finding of abuse under the 'totality of the circumstances' in section 707(b)(3)(B) may be based solely on the [Appellant's] ability to pay?"; and

2)      "Whether the bankruptcy court erred in finding that the [Appellee] met her burden of proof that granting the [Appellant] relief under chapter 7 would be an abuse under section 707(b)(3)(B)?"

(Debtor's Brief, p. 1).

For reasons that follow, we decline to address these issues as Debtor's appeal is moot.

## II.  <u>Analysis</u>

28 U.S.C. § 158(a)(1) confers jurisdiction upon this Court to hear the present appeal of the

Bankruptcy Court's Order.  However, this jurisdiction is bound by the confines of Article III of the Constitution, which limits federal courts to adjudicating only ongoing cases or controversies.  If there is no case or controversy, then the case is moot.  In re Cont'l Airlines, 91 F.3d 553, 558 (3d Cir. 1996).  See also, In re Little, 253 B.R. 427, 429 n. 4 (B.A.P. 8th Cir. 2000).  ("The issue of mootness is one of jurisdiction and district courts have an independent obligation to ascertain that subject matter jurisdiction exists during all phases of the appeal").  Central to the question of whether an appeal is moot, is whether the Court can fashion any meaningful relief.  If it is impossible for the Court to reach the desired outcome, then the appeal will be deemed moot.  In re Roller, 999 F.2d 346, 347 (8th Cir. 1993).

Here, Debtor requests that the Bankruptcy Court's Order granting dismissal of his Chapter 7 case be reversed.  Debtor argues that effectuating such relief would be relatively simple, because he does not desire disgorgement of monies already paid to creditors under Chapter 13.[2]  However, Debtor has overlooked the procedural impediments involved in effectuating his requested relief and the complexities in "undoing" at least two (2) years of creditor payments.  These factors render Debtor's appeal moot, and prevent this Court from proceeding any further in its analysis of the Bankruptcy Court's Opinion and Order.  We reach this conclusion for several reasons.

First, a confirmed Chapter 13 plan can only be revoked upon request of an interested party within 180 days of the order of confirmation and upon a showing that the order was procured by fraud.  11 U.S.C. § 1330(a).  Indeed, the Third Circuit has held that Congress intended 11 U.S.C. §

_____

[2]  In addressing the issue of mootness, we inquired into the status of the Chapter 13 plan at the March 27, 2009, oral argument.  The parties confirmed that Debtor's Chapter 13 plan was still in place and that Debtor was continuing to make payments under that plan.  The Bankruptcy Court docket generally confirms that payments have been ongoing.

4

1330(a) to be read as creating fraud as the only means by which to revoke a confirmed Chapter 13 plan.  In re Fesq, 153 F.3d 113 (3d Cir. 1998); In re Szostek, 886 F.2d 1045 (3d Cir. 1989).  Although Fesq is different from the case at hand in that it involved a creditor's appeal of the bankruptcy and district courts' denials of a motion to vacate a confirmed Chapter 13 plan, the Court unequivocally upheld the confirmed Chapter 13 plan because there were no allegations of fraud.  In re Fesq, 153 F.3d at 119.  The Court noted that "Congress established finality as an important goal of bankruptcy law," and "[r]evoking a confirmation order is a measure that upsets the legitimate expectations of both debtors and creditors."  Id. at 119-20.  Here, as the 180 day period has long passed and as there is no allegation of fraud, Debtor's Chapter 13 plan cannot now be revoked.[3]

In addition to the obstacle that 11 U.S.C. § 1330(a) presents for Debtor, the commencement and continuation of the Chapter 13 plan also renders his appeal moot.

In In re Little, 253 B.R. 427, the debtor first filed a Chapter 7 bankruptcy petition but converted it to Chapter 13 when she was informed that her residence would be administered as part of the Chapter 7 estate.  The Chapter 7 trustee objected to the debtor's motion to convert the case to a Chapter 13 and timely filed an appeal when the debtor's motion was granted.  However, the Chapter 7 trustee did not seek a stay pending appeal, and the debtor began making payments to her creditors under the confirmed Chapter 13 plan.  Id. at 428-29.  Under these circumstances, the court declined to reconvert the case back to Chapter 7, viewing that avenue as "problematic," because too much had to "be 'undone' to place the parties in their pre-conversion positions."  Some of these

---

[3] Although Debtor maintains the absolute right to reconvert to Chapter 7 at any time pursuant to 11 U.S.C. § 1307(a), the Court's right to reconvert is more limited.  Here, the only applicable means of potential conversion to Chapter 7 is governed by 11 U.S.C. § 1307(c)(7).  This section provides 11 U.S.C. § 1330(a) as a means for revocation of a confirmed Chapter 13 plan, and as discussed supra, the requirements of 11 U.S.C. § 1330(a) have not been, and cannot be met.

problems included having to obtain disgorgement of the months of distributions to creditors and the possibility that some creditors may no longer have the funds to disgorge.  The court also noted that even if it would actually be possible to undo what had transpired under the Chapter 13 plan, if an appellate court determined that the order of conversion was improper, there would be no statutory provision to stop the proceedings under Chapter 13.[4]  Thus, the debtor would have "two cases, conflicting in purpose, operating at the same time."  Given these difficulties, the court held that the confirmed Chapter 13 plan created such a comprehensive change in the circumstances that the Chapter 7 trustee's appeal was moot.  Id. at 430-31.

In considering Debtor's appeal, this Court faces the same "problematic" issues as the Little court faced.  The lack of fraud prevents the revocation of the confirmed Chapter 13 plan, and thus, the valid and enforceable Chapter 13 plan would directly conflict with any Chapter 7 relief this Court could grant.  See also In re Turner, 207 B.R. 373, 378 (B.A.P. 2d Cir. 1997) ("majority rule is that a debtor may not have simultaneous ongoing Chapter 7 and Chapter 13 proceedings.").  Moreover, disgorgement of two (2) years of distributions to creditors seems unrealistic at best.[5]

 In re Mendy, 2003 WL 22038392 (Bankr.E.D.La. 2003), is also instructive on the issue of mootness.  In Mendy, the debtor filed a Chapter 13 petition which the bankruptcy court dismissed because the debtor had more unsecured debt than allowed under Chapter 13.  Id. at *1.  The debtor appealed, but also voluntarily filed a Chapter 11 petition, which was subsequently converted to

---

    [4]  The court cited Fesq as persuasive authority that fraud was the only means by which to revoke a confirmed Chapter 13 plan.  In re Little, 253 B.R. at 430.

    [5]  The factors under the doctrine of equitable mootness discussed in In re Continental, 91 F.3d 553 (3d Cir. 1996) also support our decision.  These factors include: 1) whether the reorganization plan has been substantially consummated; 2) whether a stay has been obtained; 3) whether the relief requested would affect the rights of parties not before the court; 4) whether the relief requested would affect the success of the plan; and 5) the public policy of affording finality to bankruptcy judgments.  Id. at 560.

Chapter 7.  Id. at *2.  Upon consideration of the debtor's appeal of the dismissal of her Chapter 13 case, the court noted:

> Courts have consistently held that a "conversion of a bankruptcy proceeding from one chapter of the Bankruptcy Code to another generally obviates the need to further litigate the issues in the original proceeding, thereby mooting an appeal from the original proceeding." In re Campbell, 36 Fed. Appx. 388, 390, 2002 WL 1161024 at *1 (10 Cir. 2003). See also, In re Roller, 999 F.2d 346, 347 (8th Cir. 1993); In re J.B. Lovell Corp., 876 F.2d 96, 99 (11th Cir. 1998); In re Technical Fabricators, Inc., 65 B.R. 197, 199 (S.D.Ala..1986).  This is so whether the conversion is voluntary or involuntary and whether the appellant is the debtor or the creditor.  See In re Campbell, 36 Fed. Appx. at 390, 2002 WL 1161024 at *1.

Id. at *4.

The In re Mendy opinion also relied upon In re J.B. Lovell Corp., 876 F.2d at 99, cited above, for the proposition that "a debtor that converts a bankruptcy proceeding gives up his right to appeal because he has voluntarily chosen to pursue the remedies under a new chapter rather than exhaust his options in the original proceeding." Id.  The In re Mendy court noted that even though the debtor did not convert her bankruptcy estate because her first petition was dismissed, she ultimately chose to pursue bankruptcy in another chapter.  Id.  Given this voluntary election and the difficulty in placing the parties back in the position they were in before the court's dismissal of the Chapter 13 petition, the court found that the debtor's appeal was moot.  Id.

In the case sub judice, Debtor's counsel acknowledged that his client willfully chose to pursue the now confirmed Chapter 13 plan and will continue to make payments until his debts are discharged if this appeal is denied.  (N.T. 3/27/09, pp. 9-10,17, 33-34).  Thus, the analysis in Mendy is applicable here because Debtor has voluntarily pursued and consented to this alternative means of reaching his ultimate goal - discharge of his debts, and cannot now, many years later, expect that this plan be undone.

Debtor's decision to decline to seek a stay of the Bankruptcy Court's order dismissing his Chapter 7 relief also supports our decision.  In In re Roller, 999 F.2d 346, the Eighth Circuit highlighted the importance of obtaining a stay when it upheld the district court's dismissal of an appeal as moot.  There, the debtors originally filed a Chapter 12 petition which they dismissed, but was later reinstated.  Id. at 347.  The debtors appealed the reinstatement of the Chapter 12 and attempted to obtain a stay of that proceeding, which the bankruptcy court denied.  Id.  When the bankruptcy court converted the Chapter 12 to a Chapter 7, the Chapter 7 trustee distributed the debtors' assets.  Id.  The district court denied the debtors' appeal of the Chapter 12 reinstatement as moot because the debtors did not obtain a stay of the conversion to Chapter 7.  Id.  In affirming the district court, the Eighth Circuit noted that where assets have been transferred pursuant to a reorganization plan, it may be impossible to grant effective relief, rendering an appeal moot.  Id. citing In re Info. Dialogues, Inc., 662 F.2d 475, 476 (8th Cir. 1981).

Here, Debtor had the option of seeking a stay of the dismissal of his Chapter 7 case pending appeal, which would have alleviated the dual-track bankruptcy Debtor now pursues.  Debtor chose not to seek a stay, because, as his counsel explained, he did not want to "wait" for his appeal to be decided.  (N.T. 3/27/09, p. 33).  However, obtaining a stay and not entering into Chapter 13 would have preserved both his right to challenge the Bankruptcy Court's ruling and forestalled putting into effect a plan where interested creditors are paid over a five (5) year period.  See also, In re Chateaugay Corp., 10 F.3d 944, 953-54 (2d Cir. 1993) (finding the failure to obtain a stay is a factor in determining whether to proceed on the merits of an appeal).

Finally, Debtor's appeal must be deemed moot because the granting of his appeal could affect the rights of creditors.  In re Continental, 91 F.3d at 560.  These creditors certainly have expectations

as to Debtor's continued repayment of a portion of his debts, and any action by this Court on Debtor's appeal in Chapter 7 directly undermines those rights and expectations without affording those parties a right to be heard.  In re Fesq, 153 F.3d at 120 (Congress limited the grounds upon which a court can revoke a confirmed Chapter 13 plan to fraud because revoking such a plan upsets the legitimate expectations of creditors).  In any event, Debtor's two (2) years of payments to creditors under his confirmed Chapter 13 plan would actually undermine his position in Chapter 7 because he has been effectively paying off his debts.

As this Court cannot fashion any effective relief without ignoring Debtor's pursuit of a confirmed Chapter 13 plan, his two (2) years of payments to creditors, and his voluntary election not to request a stay of the dismissal of his Chapter 7 petition, Debtor's appeal is dismissed as moot. Our Order follows.